## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF
## MISSISSIPPI

| | |
|---|---|
| SHENZHEN KANGER TECHNOLOGY CO., LIMITED,<br><br>        Plaintiff,<br><br>v.<br><br>R&M WHOLESALE AND DISTRIBUTION INC.; SOUTHEAST DISTRO INC.; HITHAM ALRAZKI; and ABC CORP. 1-10,<br><br>        Defendants. | Case No.: **3:25-cv-702-HTW-LGI**<br><br>**COMPLAINT** |

Plaintiff Shenzhen Kanger Technology Co., Limited (the "Plaintiff") by way of this Complaint (the "Complaint") against Defendant Southeast Distro Inc. ("Southeast"), R&M Wholesale and Distribution Inc. ("R&M"), Hitham Alrazki and ABC Corp. 1-10, (collectively, the "Parties") seeks to collect $1,031,903.50 and all related interest, fees and damages relating to the unpaid invoices for goods had and received, trademark and design patent infringement with statutory damages of up to $2 million per type of good, profit disgorgement, and other damages, turnover, seizure or destruction of goods, along with for each claim the necessary interim injunctive "freeze" of Defendants' worldwide assets, websites and domains, stocks, holdings, inventory, machines, bank accounts and all property tangible and intangible, sufficient to protect ultimate judgment against the dissipation of assets threatened by Defendants' actions and therefore alleges as follows:

### PARTIES

1.     Plaintiff is a Chinese products manufacturer, often operating under the assumed name KangerTech, with its principal place of business located at Building A3, DingBaoHong Green High-Tech Park, No.8, Industrial 2nd Road, ShiYan Area, Bao'an District, Shenzhen, China (518108).

2.     Plaintiff innovates and markets industry-leading electronic-cigarette ("E-cigarette") tools, including working with third-parties to meet distribution goals in the United States.

3.     Upon information and belief, R&M Wholesale and Distribution Inc. is a Mississippi formed corporation and former business partner of Plaintiff , which Defendant owned and/or owns a series of counterfeit brands and sells various products to consumers with its principal place of business located at 4815 US-80 W, Jackson, MS 39209.

4.     Upon information and belief, Southeast Distro Inc. is a Mississippi formed corporation and former business partner of Plaintiff, which Defendant owned and/or owns a series of counterfeit brands and sells various products to consumers with its principal place of business located at 3463 Tom Watson Dr., Saltillo, MS 38866.

5.     Upon information and belief, Hitham Alrazki is the owner and chief-executive officer of Defendant Southeast Distro Inc., and a resident of the State of Mississippi, with an address at 68 Valley Vista, Tupelo, MS 38801. Mr. Alrazki controlled all relevant actions, decisions and strategies of Defendant Southeast Distro Inc. and continued on those actions despite any attempted and/or actual dissolution of Southeast Distro Inc., including the placement of unpaid orders and receipt of goods herein and the infringements herein.

6.     Defendants DOES 1-10 are all individuals and entities of currently unknown name or identity responsible for, taking part of, aiding or abetting, authorizing or otherwise liable for the actions and omissions alleged herein, sued under their fictitious names of DOES 1-10, whose names will be updated upon discovery, and are equally responsible for each of the acts alleged herein as the named Defendants. Collectively all defendants listed above including DOES 1-10 are referred to herein as "Defendants" unless otherwise designated.

7.      Plaintiff is informed and believes and, upon such information and belief, alleges that each of the Defendants, were, and are in some manner responsible for the actions, acts and omissions herein alleged, and for the damage caused by the defendants, and are, therefore, jointly and severally liable for the damages caused to Plaintiff.

8.      Defendants make, use, sell and offers for sale in the United States and/or imports into the United States the counterfeit Alit Hookahlit 40k Dispo under the Alit and Hookahlit brands (the "Accused Products").   These Accused Products under the Alit or Hookhalit brands sell significant quantities per year. Given Defendants, principal place of business and distribution nucleus in Mississippi, these Accused Products travel in commerce through Mississippi, including consumer-facing sales.

9.      This lawsuit is a collections on amounts due as well as an action for trademark and design patent infringement arising under the federal trademark statute, 15 U.S.C. § 1051 *et seq.*, and the patent laws of the United States, Title 35 of the United States Code.

10.      This Court has original and supplemental subject matter jurisdiction over this action pursuant to15 U.S.C. § 1121 and  28 U.S.C. §§ 1331, 1338(a), and 1367, as the causes of action arise from the same nucleus of operative facts.

11.      This Court also has, independently, diversity jurisdiction under 28 U.S.C. § 1332 as the parties are completely diverse citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.

12.      This Court has personal jurisdiction over Defendants because they have, directly and through their agents and intermediaries, committed acts and continue to commit acts of patent and trademark infringement within Mississippi giving rise to this action and have established minimum contacts with Mississippi such that the exercise of jurisdiction would not offend

traditional notions of fair play and substantial justice. Defendants, directly and indirectly at least through agents and intermediaries, have committed and continue to commit acts of infringement in this District by, among other things, making, using, selling, offering to sell, and importing the Accused Products.

13.     Upon information and belief, Defendants regularly conduct business in Mississippi, including significantly in this District, and purposefully avail themselves of the privileges of conducting business in Mississippi and this District. In Particular, upon information and belief, Defendants and its agents and intermediaries, make, use, import, offer for sale, sell and/or advertise their products and affiliated services in Mississippi and this District, including but not limited to sales through their websites and online e-commerce stores of the Accused Products. Upon information and belief, Defendants have placed and continue to place, infringing products into the stream of commerce, via an established distribution channel, with the knowledge and/or understanding that such products are sold in the United States, including in Mississippi and specifically including in this District.

14.     Upon information and belief, each and all Defendants derive substantial revenue from the sale of infringing products distributed within Mississippi and expect or should reasonably expect their actions to have consequences in Mississippi. In addition, on information and belief, each and all Defendants knowingly induce and continue to knowingly induce, infringement of the Asserted Patents within Mississippi by offering for sale, selling, and contracting with others to market infringing products with the intent to facilitate infringing use of the products by others within Mississippi and by creating and disseminating product information and other materials providing instruction for infringing use and by soliciting the manufacture of the Accused Products.

## FACTUAL BACKGROUND

## Defendants' Unpaid Debt

15.    Since 2007, the Plaintiff has manufactured E-cigarette products based on acquired intellectual property rights. These intellectual property rights include, but are not limited to, at all relevant times hereto the federally registered trademarks Olit (U.S. Reg. No. 5862112), Hookalit (U.S. Reg. No. 7686174), and Ulit (U.S. Reg. No. 5996562) (Collectively the "Asserted Marks").

16.    Further Plaintiff is owner by written assignment of all right, title and interest in Unites States Design Patent No. D1,080,989 (the "Asserted Patent"), including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the Asserted Patents.  Accordingly, Plaintiff possesses the exclusive right and standing to prosecute the present action for infringement of the Asserted Patents by Defendants.

17.    As a result of leveraging its innovations and intellectual property, over the years, Plaintiff has grown into a global business known for its dedication to quality. For example a popular product of Plaintiff's is its Olit Hookalit E-cigarette.

18.    For years Plaintiff provided E-cigarette products to Defendants as distribution partners into the United States market. Defendants purchased and had delivered quantities of each of the Olit Hookalit E-cigarette products, pursuant to purchase orders made on Plaintiff's, and as a result Defendants were given the limited right to sell Plaintiff's branded products in the United States as an authorized, non-exclusive distributor.

19.    Within the last two years, Defendants placed order and represented by said purchasing from Plaintiff that Defendants were financially capable of placing and paying for Plaintiff's E-cigarette products as an authorized distributor.  Such representation was inherent in the agreement to purchase goods for shipment on credit terms and each order placed thereunder.

20.     Plaintiff fulfilled all obligations upon it under its contractual relationship with Defendants.

21.     Consistent with the parties' business operations, Plaintiff sent invoices to Defendants covering the amount of Plaintiff's goods Plaintiff actually shipped to Defendants and actually received by Defendants pursuant to Defendants' purchase orders.

22.     However, the balance accumulated without timely payment and months after untimely payment, Defendants have failed to pay any of this amount. (The "Unpaid Amounts").

23.     Defendants failed to make timely payment under the invoices and as of the date of this Complaint Defendants have failed to pay the outstanding Unpaid Amounts in principal balance due to Plaintiff under the purchase orders and invoices.

24.     On July 31, 2025, the Plaintiff sent Southeast a letter demanding payment of $1,031,903.50 (before legal interest, fees and costs) and stating that legal action will be instituted by the Plaintiff if no agreement is reached between the Parties regarding repayment of the stated debt amount (the "Demand Letter"). A true copy of the Demand Letter is attached hereto as **Exhibit E**.

25.     Southeast provided no response to this Demand Letter.

26.     At present, Southeast owes the Plaintiff a total amount of $1,031,903.50 (before addition of recoverable legal interest, fees and costs) and no agreement has been reached between the Parties regarding repayment of that debt.  These are for goods had and received by Defendants, timely shipped, without rejection, notice of rejection, or other reservation by Defendants

27.     Plaintiff is informed and believes that at the time Defendants placed each of the Orders for the Defendants, that Defendants were aware that each method of promised payment and ability to timely pay was lacking and the necessary funds were not there, and that Defendants did

not believe or have the intent to pay Plaintiff for the merchandise ordered and received, both of which were not disclose to Plaintiff for the purpose of causing Plaintiff to ship goods in ignorance of the true facts.

28.    Plaintiff is also entitled to a TRO and preliminary injunction freezing all assets of Defendants worldwide in light of their repeat inability to pay as, on information and belief, shown by their many Unpaid Orders and dishonest acts of counterfeiting creating a likelihood that Defendants will dissipate assets prior to the time it takes Plaintiff to successfully reach final adjudication in this action. *E.g. In re Estate of Marcos*, 25 F.3d 1467, 1478 (9th Cir. 1994) ("Once personal jurisdiction of a party is obtained, the District Court has authority to order it to "freeze" property under its control, whether the property be within or without the United States").

**Plaintiff's Intellectual Property Rights**

29.    United States Design Patent No. D1,080,989 is a design patent entitled "Electronic cigarette," and issued June 24, 2015 with the inventor being Plaintiff's employee Xiaochun Zhu and the patent assignee being Plaintiff. Plaintiff is the owner of the Asserted Patent. The application leading to the Asserted Patent was filed on April 29, 2024. A true and correct copy of the Asserted Patent is attached hereto as **Exhibit D** and incorporated herein by reference. *See* **Ex. D.** The patent term remains in effect and it is not expired.

30.    On March 11, 2019, the United States Patent and Trademark Office ("USPTO") issued to Plaintiff U.S. Trademark Registration No. 5,862,112 for OLIT® Mark in connection with "[Cigarettes; ] Electronic cigarette atomizers sold empty; Electronic cigarette cases; cigarette holders,not of precious metal; Electronic smoking pipes; Electronic cigarette liquid (e-liquid) comprised of vegetable glycerin; [ lighters for smokers;] Cigarette filters; Flavorings for tobacco, other than essential oils; Electronic cigarettes". A true and correct copy of this registration and a

true and correct copy of the USPTO's online Trademark Electronic Search System (TESS) printout for this registration is attached as **Exhibit A**, with both being incorporated herein by reference.

31.    The OLIT® Mark is an incontestable mark. On May 2, 2025, Plaintiff renewed the registration for its OLIT® Mark, with the USPTO accepting Plaintiff's Section 8 and 15 declarations of use and incontestability. The mark has been in continuous and uninterrupted use in commerce in the United States at all relevant times hereto.

32.    On February 25, 2020, the USPTO issued to Plaintiff U.S. Trademark Registration No. 5,996,562 for ULIT® Mark in connection with "Cigarette tubes; Cigarettes containing tobacco substitutes, not for medical purposes; Electronic cigarette cases; Electronic cigarettes; Electronic smoking pipes; Flavorings for tobacco, other than essential oils; Liquid nicotine solutions for use in electronic cigarettes; Oral vaporizers for smokers; Electronic cigarettes for use as an alternative to traditional cigarettes". A true and correct copy of this registration and a true and correct copy of the USPTO's online Trademark Electronic Search System (TESS) printout for this registration is attached as **Exhibit B**, with both being incorporated herein by reference.  The mark has been in continuous and uninterrupted use in commerce in the United States at all relevant times hereto.

33.    On February 11, 2025, the USPTO issued to Plaintiff U.S. Trademark Registration No. 7,686,174 for HOOKALIT® Mark in connection with "Cigarette filters; Cigarettes containing tobacco substitutes, not for medical purposes; Electronic cigarette cases; Electronic cigarettes; Electronic cigarettes for use as an alternative to traditional cigarettes; Flavourings, other than essential oils, for tobacco; Flavourings, other than essential oils, for use in electronic cigarettes; Lighters for smokers; Liquid nicotine solutions for use in electronic cigarettes; Oral vaporizers for smokers". A true and correct copy of this registration and a true and correct copy of the USPTO's online Trademark Electronic Search System (TESS) printout for this registration is attached as

**Exhibit C**, with both being incorporated herein by reference.  The mark has been in continuous and uninterrupted use in commerce in the United States at all relevant times hereto.

34.    Plaintiff is and has at all relevant times been the owner of all right, title and interest in, including the right to enforce, the OLIT®, HOOKALIT®, and ULIT® Marks (collectively the "Asserted Marks").

35.    The Asserted Marks are inherently distinctive, and further have acquired distinctiveness prior to the first use in commerce of the counterfeit infringing uses alleged herein at least through substantially exclusive and continuous use of the mark in commerce in the United States, including all distributed and licensed uses inuring to the exclusive benefit of Plaintiff as the trademark owner and/or licensor.  Any and all permissible uses of the Asserted Marks by Defendants and related parties in connection with the sale of genuine goods purchased from Plaintiff were pursuant to license, inured to the benefit of Plaintiff, and gave Defendants no rights in the Asserted Marks to Defendants.

36.    Since adoption, the Asserted Marks have been consistently used on Plaintiff's packaging and marketing, both with and without stylization. For example Plaintiff offers its Olit Hookalit line of E-cigarette products for commercial sale in the U.S., including having sold the same to Defendants.

37.    Plaintiff's redistributors, including Defendants, have sold and/or currently sell products in association with the Asserted Marks across the United States, which use with genuine products gives Defendants no rights in the Asserted Marks.

38.    Plaintiff's registration of the Asserted Marks on the Principal Register maintained by the USPTO is constructive notice to Defendants and others of Plaintiff's claim of ownership thereof pursuant to 15 U.S.C. § 1072.

39. Further, Plaintiffs marking of its related products with the ® notice provides a further layer of constructive notice, in particular to Defendants who were directly provided products with the ® notice.

40. Yet despite these notices and prior relationship with Plaintiff, and further egregious given its prior purchases from Plaintiff and ultimate decision to bilk as many goods out of Plaintiff without paying and with no intention of paying, Defendants still began to market, source, offer for sale, and distribute goods with branding confusingly similar to the Asserted Marks. For instance, around the time Defendants ceased payments to Plaintiff for its Olit Hookalit products, Defendants began to offer for sale the Alit Hookahlit products. That is Defendants simply substituted the "O" in Plaintiff's "Olit" trademark for an "A" and added a single "h" to Plaintiff's "Hookalit" trademark, neither of which meaningful (or at all) changes the visual or auditory similarities and identicality.

**Defendants Infringement of Plaintiff's Intellectual Property Rights**

41. In or around the summer of 2025, Plaintiff discovered its payment-defunct distributors began offering for sale E-cigarette counterfeit and non-genuine devices under the brands of ALIT and HOOKAHLIT, not acquired from Plaintiff.

42. In addition to the ALIT and HOOKAHLIT names directly paralleling the OLIT®, HOOKALIT®, and ULIT® Marks, so too did the product packaging. In fact, even the Defendants' website included side-by-side representation of the Asserted Marks and Accused Products with these confusingly similar branded products.



OLIT HOOKALIT 40K
PUFFS DISPO 1CT

ALIT HOOKAHLIT 40K
PUFFS DISPO 5CT

43.    Defendants OLIT and Hookahlit branded products are virtually identical to Plaintiff's OLIT®, HOOKALIT®, and ULIT® Marks and the product design for the same.

44.    The marketing elements used by the parties share an overwhelming and striking similarity, even down to nearly fully overlapping flavor offerings with one another to include unique non-descriptive names like "LADY KILLER" and "LUCID DREAM" (e.g. "BLUE RAZZ, COOL MINT, GRAPE ICE, GRAPE MINT, LADY KILLER, LEMON MINT, LUCID DREAM, PEACH ICE, PEACH MANGO WATERMELON).

**ALIT HOOKAHLIT**

9/2/25, 8:37 AM                              ALIT HOOKAHLIT 40K PUFFS DISPO 5CT

| Stock Qty Qty | | ALIT HOOKAHLIT 40K PUFFS DISPO 5CT Price |
|---|---|---|
| 21 | 0 | BLUE RAZZ |
| 310 | 0 | BLUEBERRY ICE |
| 336 | 0 | COOL MINT |
| 334 | 0 | GRAPE ICE |
| 349 | 0 | GRAPE MINT |
| 323 | 0 | LADY KILLER |
| 338 | 0 | LEMON MINT |
| 333 | 0 | LOVE 66 |
| 30 | 0 | LUCID DREAM |
| 329 | 0 | MIXED BERRIES |
| 23 | 0 | PEACH ICE |
| 304 | 0 | PEACH MANGO WATERMELON |
| 291 | 0 | STRAWBERRY PUNCH |
| 336 | 0 | TWO APPLE |
| 306 | 0 | WATERMELON ICE |

ADD TO CART

**OLIT HOOKALIT**

9/3/25, 4:16 PM                              OLIT HOOKALIT 40K PUFFS DISPO 1CT

☆☆☆☆☆ 0 reviews

Product Code: AZ310396338
SKU: 6977855600546
Availability: In Stock

**AVAILABLE OPTIONS**

| Stock Qty Qty | | OLIT HOOKALIT FLAVORS | Price |
|---|---|---|---|
| 58 | 0 | BLUE RAZZ | |
| 57 | 0 | BROWN ALE | |
| 107 | 0 | COOL MINT | |
| 2 | 0 | GRAPE ICE | |
| 12 | 0 | GRAPE MINT | |
| 4 | 0 | LADY KILLER | |
| 1 | 0 | LEMON MINT | |
| 3 | 0 | LUCID DREAM | |
| 13 | 0 | PEACH ICE | |
| 4 | 0 | PEACH MANGO WATERMELON | |
| 2 | 0 | TWO APPLE SHISHA | |

ADD TO CART

45.     The parties' goods sold in association with their respective marks are identical. They are both E-cigarette products of the kind that the public could certainly attribute to or licensed from a single source. Their similarities are compounded by the years of authorized sale of genuine goods of Plaintiff through the same marketing channels and with the same cohesive set of similarities. They both retain the rhyme scheme (two words ending in the identical "lit"), length of terms, vowel placement, pronunciation ("hooka" and "hookah" being pronounced the same with a silent "h"), and use as a branded product mark.

46.     The parties' offered goods, channels of trade and customers are identical or highly similar, particularly so as Defendants literally have served as non-exclusive distributors of Plaintiff and its Asserted Products, right up until they started selling the counterfeit products.

47.     Defendants' infringement was also intentional and willful, including because Defendants intended to derive an undue benefit from their coopting of Plaintiff's established

12

Asserted Marks and Designs all while failing to remit payment on legitimate products sourced from Plaintiff, including as demonstrated by the attempts to slightly vary spelling without changing sight, sound, meaning or commercial effect.

48.     This is the 'hard core' or 'first degree' of trademark infringement that seeks to trick consumers and retailers into believing they are getting the genuine Plaintiff's article, rather than the colorable imitation they are in fact getting.  Given the overlapping distribution channels, that Defendants previously distributed authorized genuine branded products with the Asserted Marks, sale by these same companies and channels of identically branded imitations, the Accused Products are clear counterfeits. The Accused Products have a heightened likelihood of confusion, and are deliberately designed to play off of the confusion for unsuspecting retailers and consumers who are unable to and confused in failing to distinguish between the counterfeit goods and the previously authentic goods produced through the same channels, which confusion is heightened where the items are used for personal consumption of vaped products and therefore of heightened concern for inferior product and risk of harm from lack of quality control by the legitimate brand owner.

49.     On August 18, 2025, Plaintiff provided Defendants concurrent cease-and-desist letters, directly informing Defendants of their infringing use of Plaintiff's trademarks and design patents. The cease-and-desist letters demanded immediate cessation of all infringement and a responses within ten days thereto.

50.     Defendants provided no response within the ten-day period. Rather the infringement has continued.

51.     By infringing with their unauthorized use, Defendants have harmed Plaintiff's valuable goodwill. They have also deprived Plaintiff of possible licensing revenue and sales

opportunities, hindered expansion opportunities, and caused irreparable injury that is difficult to calculate or adequately compensate through monetary damages. Thus, Plaintiff brings this action for breach of contract, trademark and design patent infringement.

## FIRST COUNT
## BOOK ACCOUNT
**(Against Defendant Southeast, Hitham Alrazaki, and DOES 1-10)**

52.     Plaintiff repeats the allegations set forth in this entire Complaint as if fully stated herein.

53.     Plaintiff and Defendant Southeast entered into financial transactions with each other under which Southeast would order Plaintiff's branded products from Plaintiff for resale, and Plaintiff would ship the ordered, branded merchandise to Southeast in exchange for money.

54.     Plaintiff, in the regular course of its business with Southeast, kept an account of the debits and credits involved in its transactions with Southeast, and has done so for the Unpaid Orders.

55.     On September 1, 2024 Defendant Southeast filed a notice of dissolution, yet both before and after this September 1, 2024 Southeast entered into and continued to enter into financial transactions with Plaintiff through Southeast's owner, representative officer Hitham Alrazaki and/or Does 1-10. To the extent Southeast is found to have been dissolved and incapable of entering transactions after September 1, 2024, Hitham Alrazaki and/or Does 1-10 by placing and receiving further orders and/or continuing on the business of Southeast is also personally responsible for these accounts and wrongful actions.

56.     As set forth above, there is due and owing $1,031,903.50 (before legal interest, fees and costs) by Southeast to the Plaintiff on a certain book account for goods manufactured by the Plaintiff and provided Southeast pursuant to accumulated unpaid invoices.

57.    Payment has been demanded of Southeast by the Plaintiff towards amounts owed to it by Southeast and Southeast has not satisfied its indebtedness to the Plaintiff.

**WHEREFORE**, the Plaintiff demands judgment against Southeast and Hitham Alrazaki and/or Does 1-10 in the amount of $1,031,903.50, together with lawful interest, attorneys' fees and costs of suit with amounts continuing to accrue to the extent that amounts owed to the Plaintiff by Southeast continue to accrue.

<u>**SECOND COUNT**</u>
<u>**UNJUST ENRICHMENT**</u>
**(Against Defendant Southeast, Hitham Alrazaki, and DOES 1-10)**

58.    Plaintiff repeats the allegations in this entire Complaint as if fully stated herein.

59.    As a result of the conduct described above, Southeast has been and will be unjustly enriched at the expense of the Plaintiff. Specifically, the Plaintiff conferred a benefit upon Southeast by manufacturing goods and providing them to Southeast for which it has not been paid. Southeast has been unjustly enriched by not having paid for the goods that were provided by the Plaintiff.

60.    To allow Southeast to retain the full value of the benefit conferred, given that the Plaintiff provided goods to Southeast for which they have not been compensated, would violate an established principle of equity.

61.    To the extent that Southeast has received goods from the Plaintiff for which the Plaintiff has not been compensated, the Plaintiff has been damaged.

62.    On September 1, 2024 Defendant Southeast filed a notice of dissolution, yet both before and after this September 1, 2024 Southeast entered into and continued to enter into financial transactions with Plaintiff through Southeast's owner, officer and representative Hitham Alrazaki and/or Does 1-10. To the extent Southeast is found to have been dissolved and incapable of entering transactions after September 1, 2024, Hitham Alrazaki and/or Does 1-10 by continuing

on the business of Southeast and/or placing and receiving further orders, received the unjust enrichment of those transactions without payment to Plaintiff.

**WHEREFORE**, the Plaintiff demands judgment against Southeast and Hitham Alrazaki and/or Does 1-10 in the amount of $1,031,903.50, together with lawful interest, attorneys' fees and costs of suit with amounts continuing to accrue to the extent that amounts owed to the Plaintiff by Southeast continue to accrue.

### THIRD COUNT
### BREACH OF CONTRACT
### (Against Defendant Southeast, Hitham Alrazaki, and DOES 1-10

63.     Plaintiff repeats the allegations in this entire Complaint as if fully stated herein.

64.     Plaintiff and Southeast entered into a contractual agreement by means of purchase orders and invoices, whereby Southeast would order Plaintiff's branded products from Plaintiff for resale, and Plaintiff would ship the ordered branded merchandise to Southeast in exchange for money timely paid upon the earlier of delivery or invoice.  The Unpaid Orders were placed pursuant to that contract and were themselves contractual obligations to pay for the goods so ordered, memorialized in writing including Purchase Orders.

65.     Plaintiff has performed its obligations under the contract with Southeast.  Any further performance is excused.

66.     Southeast has breached its obligations owed to Plaintiff under the contract, including by failing to pay amounts invoiced for merchandise purchased by Southeast and supplied by Plaintiff to Southeast.

67.     Plaintiff has been damaged by Southeast's breach of contract in an amount to be proved at trial but in no event less than the Unpaid Amounts, plus attorneys' fees and interest at the contractual rate, 8% under Mississippi Code  75-17-1, or the applicable statutory whichever is

greater, which is provded under Mississippi law.  Southeast agreed to a broad indemnification which includes all losses, bills, and costs from suits or controversies relating to breaches of Southeast's contractual obligations, including attorneys' fees and costs.

68.    On September 1, 2024 Defendant Southeast filed a notice of dissolution, yet both before and after this September 1, 2024 Southeast entered into and continued to enter into contracts with Plaintiff through Southeast's owner, officer and representative Hitham Alrazaki and/or Does 1-10. To the extent Southeast is found to have been dissolved and incapable of entering contracts after September 1, 2024, Hitham Alrazaki and/or Does 1-10 by ordering for and continuing on the business of Southeast is responsible for these contractual obligations.

**WHEREFORE**, the Plaintiff demands judgment against Southeast and Hitham Alrazaki and/or Does 1-10 in the amount of $1,031,903.50, together with lawful interest, attorneys' fees and costs of suit with amounts continuing to accrue to the extent that amounts owed continue to accrue.

**FOURTH COUNT**
**FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. §1114**
**(Against All Defendants)**

69.    Plaintiff incorporates all allegations contained in this Complaint as if fully restated herein.

70.    Plaintiff owns registered trademark rights in the Asserted Marks, distinctive marks at the time of the infringement, two of which are and were at all relevant times incontestable.

71.    Plaintiff is or is likely to be damaged by the Defendants' wrongful and unauthorized use of the Asserted Marks in commerce and interstate commerce.

72.    Defendants' use of ALIT and HOOKAHLIT caused and continues to cause a likelihood of confusion, mistake, and deception with Plaintiff's Asserted Marks and constitutes an infringing use of the Asserted Marks in violation of 15 U.S.C. § 1114.

73.     Defendants have committed the foregoing acts of infringement with knowledge of Plaintiff's prior rights in the Asserted Marks both intentionally and willfully.

74.     Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law. An award of monetary damages alone cannot fully compensate Plaintiff for its injuries.

75.     Plaintiff is entitled to, among other relief, injunctive relief, an award of actual damages, corrective advertising costs, reasonable licensing fees, a reasonable portion of Defendants' profits made on sales of infringing goods (*see, e.g. W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 662 (2d Cir. 1970)), and the costs of this action. Enhancement for both damages (up to treble) and profits pursuant to Section 1117(a) of the Lanham Act is also warranted.

76.     Furthermore, on information and belief, the actions of Defendants were undertaken willfully, and with the intention of causing confusion, mistake, or deception, and this case qualifies as an exceptional case entitling Plaintiff to recover enhanced damages and reasonable attorneys' fees, together with prejudgment and post-judgment interest. *See* 15 U.S.C. §§ 1116, 1117.

## FIFTH COUNT
## FEDERAL TRADEMARK INFRINGEMENT UNDER SECTION 1125
### (Against All Defendants)

77.     Plaintiff incorporates all allegations contained in this Complaint as if fully restated herein.

78.     Plaintiff owns common law trademark rights in the Asserted Marks.

79.     Defendants' use of the ALIT and HOOKAHLIT Mark violates 15 U.S.C. § 1125(a) because Defendants' use of "ALIT" and "HOOKAHLIT" misrepresents that, and creates a likelihood of confusion as to whether, Plaintiff is the source, sponsor of, or an affiliate of Defendants' goods.

80.     Plaintiff as the senior user properly insists that its goodwill and reputation should not be imperiled by the acts of another over which Plaintiff has no control.

81.     Plaintiff's goodwill is of substantial value, and Plaintiff is suffering and will continue to suffer irreparable harm if Defendants' unfair competition as to its use of "ALIT" and "HOOKAHLIT" is allowed to continue.

82.     Defendants' misconduct will continue unless enjoined by this Court. An award of monetary damages alone cannot fully compensate Plaintiff for its injuries. Plaintiff lacks an adequate remedy at law.

83.     Plaintiff is entitled to, among other relief, injunctive relief, an award of actual damages, corrective advertising costs, reasonable licensing fees, a reasonable portion of Defendants' profits made on sales of infringing goods, and the costs of this action. Enhancement pursuant to Section 1117(a) of the Lanham Act is also warranted for both damages (up to treble) and profits.

84.     Furthermore, on information and belief, the actions of Defendants were undertaken willfully, designed to trade upon the consumer goodwill enjoyed by Plaintiff, and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Plaintiff to recover additional enhanced damages and reasonable attorneys' fees, together with prejudgment and post-judgment interest. *See* 15 U.S.C. §§ 1116, 1117.

### SIXTH COUNT
### FEDERAL TRADEMARK COUNTERFEITING UNDER SECTIONS 1114, 1116
### (Against All Defendants)

85.     Plaintiff incorporates all allegations contained in this Complaint as if fully restated herein.

86.    Plaintiff owns registered trademark rights in the Asserted Marks, distinctive marks at the time of the infringement.

87.    Defendants' Accused Products featuring the ALIT and/or HOOKAHLIT marks are identical with and substantially indistinguishable from Plaintiff's products featuring the Asserted Marks so as to constitute a counterfeit and spurious mark, used willfully and with knowledge of Plaintiff's senior rights.

88.    Defendants' use of the Asserted Marks, for the goods subject to Plaintiff's registrations, along with the designs, as alleged in this Complaint, are infringement in the first degree and hard core infringement.  Defendants' actions constitute counterfeiting, and willful counterfeiting.

89.    Defendants intentionally used the marks knowing them to be counterfeit marks in connection with the sale, offering for sale, and distribution of the goods.

90.    Thus, Plaintiff is entitled to the remedies available against counterfeit marks under Section 1117(b) and (c) of the Lanham Act, including automatic trebling of all profits and damages awarded, automatic award of attorney's fees, prejudgment interest on such amounts (in addition to post-judgment interest), and or statutory damages up to a maximum amount of $2 million per type of good sold, offered for sale, or distributed.

91.    Defendants have used and continue to use a counterfeit of the federally registered Asserted Marks in connection with the advertising of goods or services, which is likely to cause consumer confusion or mistake, or to deceive in violation of Sections 32(1)(b) and 34(d) of the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1116(d).

92.     Defendants imported, distributed, transported, offered to sale, and sold the Accused Products knowing the Accused Products bore counterfeits of Plaintiff's products and Asserted Marks, or willfully ignored whether the Accused Products bore counterfeits.

93.     Defendants engaged in a deliberate effort to cause confusion and mistake among the consuming public as to the source, affiliation and or sponsorship of said Accused Products, and to gain to Defendants, the benefit of the good will associated with the Asserted Marks.

94.     Defendants counterfeit uses, which was done willfully, and thus Plaintiff is entitled to statutory damages of up to $2 million per counterfeit mark per type of goods or services sold, offered for sale, or distributed, under 15 U.S.C. § 1117.  Each registered good may be treated as a separate type of good for purposes of their calculation.

95.     Such conduct on the part of Defendants has injured Plaintiff in an amount to be determined at trial and has caused and threatens to cause irreparable harm to Plaintiff for which Plaintiff has no adequate remedy at law.

96.     Plaintiff is entitled to, among other relief, injunctive relief, an award of actual damages, corrective advertising costs, reasonable licensing fees, a reasonable portion of Defendants' profits made on sales of counterfeit and infringing goods (*see, e.g. W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 662 (2d Cir. 1970)), and the costs of this action. Enhancement for both damages (up to treble) and profits pursuant to Section 1117(a) of the Lanham Act is also warranted.

## SEVENTH COUNT
## MISSISSIPPI COMMON LAW UNFAIR COMPETITION AND TRADEMARK INFRINGEMENT
### (Against All Defendants)

97.     Plaintiff incorporates all allegations contained in this Complaint as if fully restated herein.

98.     Defendants have engaged in unfair competition against Plaintiff for the reasons of the conduct alleged in this Complaint.  The unlawful and unfair conduct is injuring the goodwill of Plaintiff and its Asserted Marks.  Defendants are liable for unfair competition.

99.     Defendants have engaged in and are liable for common law trademark infringement as recognized by O MS Code § 75-25-31 (2024) and Mississippi common law.

100.     By and through this conduct, Plaintiff has directly suffered injuries, and Defendants have been unjustly enriched.

101.     Plaintiff is entitled to restitution, the recovery of damages, and the recovery of the profits earned by Defendants by virtue of its conduct and other damages to be proven at trial.

102.     As a result of Defendants' unfair competition and trademark infringement, Plaintiff is suffering irreparable injury, and Defendants' conduct should therefore be enjoined.

103.     Plaintiff is entitled to reasonable attorneys' fees from Defendants.

104.     On information and belief, the aforementioned conduct of Defendants was and is willful, done with actual malice, conducted with gross negligence, and is evidenced by a willful, wanton and reckless disregard for the safety and rights of Plaintiff and consumers, and constitutes deceptive counterfeiting.  Plaintiff is therefore entitled to punitive damages.

### EIGHTH COUNT
### CONTRIBUTORY TRADEMARK INFRINGEMENT
#### (Against All Defendants)

105.     Plaintiff incorporates all allegations contained in this Complaint as if fully restated herein.

106.     For each infringement and counterfeiting, Defendants are also contributorily and indirectly liable for trademark infringement and counterfeiting, in addition to their direct liability.

107.     This contributory infringement and counterfeiting includes, on information and belief, Defendants contributing to infringement and counterfeiting by sourcing products market,

marketed and promoted with the prominent use in commerce of the infringing brands, and assisting in the sale of products featuring the ALIT and HOOKAHLIT brands despite directed knowledge of the Asserted Marks, and intending that the infringing products be sold on the basis of confusion resulting therefrom.

108. To the extent any of the actions alleged in this Complaint were carried out by other third parties participating in ALIT and HOOKAHLIT usage, rather than Defendants directly, Defendants had knowledge of the third parties' actions described above. Defendants' knowledge of and participation therein, constitute contributory infringement and counterfeiting that is likely to cause or has already caused consumer confusion.

109. Defendants also intentionally induced these other participants in the infringement and counterfeiting, to infringe, counterfeit, and use the Asserted Marks.

110. Defendants were at all relevant times able to exercise direct control and practical control over third parties that lead to sales of E-cigarettes, including the third parties' trademark violations alleged above using the ALIT and HOOKAHLIT Marks.

111. Defendants did not prevent the third parties' trademark violations, but instead encouraged those actions by providing and requiring use of infringing and counterfeiting materials bearing the ALIT and HOOKAHLIT Marks and refusing to take simple take-down and recall measures to prevent third parties' trademark violations with respect to the ALIT and HOOKAHLIT Marks.

112. In addition, while Defendants had the ability and power to take simple measures to prevent third parties' trademark violations alleged above, they chose not to do so.

113. To be clear, these acts of Defendants included Defendant Alrazki's personal actions in approving, designing and authorizing the infringing acts, and intending personally to benefit off

of the confusingly similar marks used on the infringing and counterfeit goods, heightened by the use of similar marketing channels, similar designs, and placement in the same channels for sales including side-by-side sales online.

114.    As a result of Defendants' misconduct, Plaintiff has suffered and will continue to suffer damage to its business, reputation, and goodwill.

115.    As a direct and proximate result of Defendants' willful and intentional actions, Plaintiff has suffered damages in an amount to be determined at trial and, unless Defendants are restrained, Plaintiff will continue to suffer irreparable damage, thus entitling Plaintiff to injunctive relief.

116.    Plaintiff is entitled to, among other relief, injunctive relief, an award of actual damages, corrective advertising costs, reasonable licensing fees, a reasonable portion of Defendants' profits made on sales of infringing goods, and the costs of this action.

117.    On information and belief, the aforementioned conduct of Defendants was and is willful, done with actual malice, conducted with gross negligence, and is evidenced by a willful, wanton and reckless disregard for the safety and rights of Plaintiff and consumers, and constitutes deceptive counterfeiting.  Plaintiff is therefore entitled to punitive damages.

**NINTH COUNT**
**DESIGN PATENT INFRINGEMENT**
**(Against Defendants Southeast, R&M, and DOES 1-10)**

118.    Plaintiff incorporates all allegations contained in this Complaint as if fully restated herein.

119.    Plaintiff owns the design in the Asserted Patent, the design is original to Plaintiff and the design features claimed in the Asserted Patent are non-functional.

120.    Defendants have infringed and continue to infringe the Asserted Patent by using, selling and/or offering to sell in the United States, and/or importing into the United States the Accused Products, which embody the design covered by the Asserted Patent.

121.    The Asserted Patent discloses inventions related to "[t]he ornamental design for a electronic cigarette, as shown and described" in the patent.

122.    An ordinary observer of the Accused Products and Plaintiff's patented design, giving such attention that an E-cigarette purchaser usually gives, would find the two designs to be substantially the same. An ordinary observer would recognize that Defendants' design is substantially the same as the patented design in the Asserted Patent. The overall impression of the two designs is substantially the same.

123.    Notably, the infringing products are identical to the predecessor products Plaintiff supplied to Defendants prior to terminating their relationship, which were in turn designed to closely copy the Asserted Patent's design. In other words, they are a copy of a copy, and even if there were asserted slight differences, they would in no way be a reflection of any design-around efforts, and indeed go to aspects that are not claimed. By way of example, the Accused Products feature different, albeit still similar, graphic designs, the subject of copyright law.

124.    Further, an ordinary observer familiar with the prior art would be deceived into believing the Defendants' design is the same as the design patented in the Asserted Patent. Of the many designs for an e-cigarette, an ordinary observer would recognize that none of the prior art e-cigarettes include all of the features of the Asserted Patent.

125.    Defendants have directly infringed the Asserted Patent, including by making using, selling, offering for sale in the United States, and importing into the United States, products that

are substantially similar to the Asserted Patent in the eyes of an ordinary observer, even when educated as to the state of the prior art and any supposedly unprotectible aspects of the design.

126.    Defendants have had knowledge of the Asserted Patent from a date no later than the date of the filing of this Complaint, and indeed prior to 2023.

127.    Defendants at all relevant times hereto also actively induced and have induced infringement of the Asserted Patent under 35 U.S.C. § 271(b), and continue to do so.

128.    Upon information and belief, each and every one of the Defendants have at all relevant times directed and/or authorized the Accused Products' manufacturers to make, use, sell, or offer for sale in the United States or import into the United States the Accused Products.

129.    Upon information and belief, Defendants encouraged and facilitated infringement with specific intent and continue to encourage and facilitate infringement with specific intent by, for example, training and teaching the manufacturers to make the Accused Products in a manner that infringes at least one claim of the Asserted Patent. For example, Defendants are aware that the features claimed in the Asserted Patent are features in the Accused Products and are features included by Defendants' manufacturers in the Accused Products.

130.    Defendants actively induce infringement of the Asserted Patent with knowledge and the specific intent to encourage that infringement by, *inter alia,* disseminating the Accused Products and providing promotional materials, marketing materials, training materials, instructions, product manuals, user guides and technical information to third parties including but not limited to resellers, distributors, customers, potential customers, and other end users of the Accused Products. Those third parties directly infringe the Asserted Patent at least by selling, offering to sell, and/or using the Accused Products.

131.    Defendants have been and are now contributing to the infringement of the '715 Patent under 35 U.S.C. § 271(c), and continue to do so.

132.    Upon information and belief, Defendants knew or should have known of the Asserted Patent and have acted, and continues to act, in an egregious and wanton manner by infringing the Asserted Patent. On information and belief, Defendants' infringement of the Asserted Patent has been and continues to be willful and deliberate. Plaintiff is a known pioneer e-cigarette tools with whom Defendants know and have familiarity, having sold authentic versions of Plaintiff's product utilizing the design patents before willfully electing to change to counterfeit products. On information and belief, Defendants knowingly developed, have sold, sell and offer to sell the Accused Products in an infringing manner that was known to Defendants or was so obvious that Defendants should have known of the infringement.

133.    Upon information and belief, despite knowing their actions constituted infringement of the Asserted Patent and/or despite knowing that there was a high likelihood that its actions constituted infringement of the Asserted Patent, Defendants nevertheless continued their infringing actions, and continue to make, use and sell the Accused Products, and said use  after the filing of this Complaint.

134.    Defendants' acts of infringement have injured and damaged Plaintiff and will continue to injure and damage Plaintiff, the precise amount of which cannot be ascertained at this time.

135.    Upon information and belief, Defendants' infringement of the Asserted Patent has taken place with full knowledge of the patent and is willful, deliberate, and intentional, and therefore gives rise to an exceptional case under 35 U.S.C. § 285.

136.    Defendants' actions have caused Plaintiff to suffer irreparable harm resulting from the loss or impairment of its lawful patent rights and the loss or impairment of its ability to exclude others from making, using, selling, offering to sell and importing the inventions of the Asserted Patent, loss of goodwill from the consuming public and other third-party resellers of products incorporating the patents, and reputational harm due to inability to control production of the Accused Products. On information and belief, Defendants will continue these infringing acts unless enjoined by this court.

137.    Plaintiff is entitled to the injunctive relief, in the form set forth in the Prayer for Relief, as any monetary relief and remedies at law are inadequate to fully remedy Plaintiff's harms, unless and until this Court enjoins and restrains such activities.

138.    Plaintiff is entitled to a finding that Defendants knew of the Asserted Patent prior to the filing of this lawsuit.

139.    Plaintiff is entitled to a finding that Defendants infringed the Asserted Patent and as a result, Plaintiff is entitled to all monetary relief as made available pursuant to 35 U.S.C. § 284 and to be determined by a jury at trial.

140.    Plaintiff is entitled to a finding that Defendants' infringement of the Asserted Patent was willful and deliberate, was objectively reckless due to the high likelihood that their actions constituted infringement of a valid patent, and they knew or should have known of this objectively-defined risk at least because the risk was so obvious. Thus, Plaintiff is entitled to enhanced damages pursuant to 35 U.S.C. § 284, and costs and fees incurred prosecuting this action.

141.    Plaintiff is also entitled to Defendants' total profit made on and in connection with the infringing goods, in an amount to be determined at trial.

142.    Plaintiff is also entitled a TRO, preliminary and permanent injunctive relief to avoid irreparable harm from continuing, including: (1) barring Defendants, their agents, successors, and affiliates from making, using, selling, offering to sell, and/or importing products incorporating the Asserted Patent or technology substantially similar to the Asserted Patent; (2) directing U.S. Customs to immediately freeze and hold any importations involving Defendants for products incorporating the Asserted Patent or technology substantially similar to the Asserted Patent; and (3) directing third-party e-commerce stores and other online and brick and mortar retailers with notice to delist any offerings by Defendants of products incorporating the Asserted Patent or technology substantially similar to the Asserted Patent and freezing Defendants' accounts for amounts paid for the Accused Products.

143.    Given the recent and ongoing significant financial troubles of Defendants, and the risk of irreparable harm from a potentially uncollectible judgment, Plaintiff is also entitled to a freeze order sufficient to protect any ultimate judgment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for judgment, as follows:

1.    That Plaintiff be granted TRO, preliminary and permanent injunctive relief under the Lanham Act and Patent Act applicable to Defendants and all of their respective officers, agents, servants, representatives, employees, attorneys, and all other persons acting in concert with them, preventing all acts of trademark infringement, trademark infringement and design patent infringement, preventing all further acts of infringement, including without limit that , be enjoined from:

      a.    Using the Asserted Marks, "ALIT," "HOOKAHLIT," or any mark

confusingly similar to the Asserted Marks, in connection with the marketing, promotion, advertising, sale, or distribution of any e-cigarette product;

b.      Encouraging or assisting others to use the Asserted Marks, "ALIT," "HOOKAHLIT," or any mark confusingly similar to the Asserted Marks, in connection with the marketing, promotion, advertising, sale, or distribution of any e-cigarette product;

c.      Making or inducing others to make any false, misleading or deceptive statement of fact, or representation of fact in connection with the promotion, advertisement, packaging, display, sale, offering for sale, manufacture, production, circulation or distribution of the registered goods.

d.      Enter temporary, preliminary and permanent injunctive relief including all injunctive and any other conduct-based relief identified in this Prayer and the Complaint, without limit as to which cause of action said relief was expressly listed with respect to.

e.      Enjoin Defendants, their parents, subsidiaries, affiliates, agents, servants, employees, attorneys, representatives, successors and assigns, and all others in active concert or participation with them from infringing the Asserted Patent;

f.      Order U.S. Customs to immediately seize and detain any and all importations involving the Defendants and any of the Accused Products or Defendants' other products featuring the technology covered by any of the Asserted Marks or Asserted Patents.

g.      Order third-party e-commerce platforms to disable any and all offering pages involving and accounts related to the Defendants and any of the Accused Products or Defendants' other products featuring the Asserted Marks or the design covered by the Asserted Patent.

2.      That Defendants file, within ten (10) days from entry of an injunction, a declaration with this Court signed under penalty of perjury certifying the manner in which Defendants have complied with the terms of the injunction;

3.      That Defendants be adjudged to have violated 15 U.S.C. § 1114 by infringing Plaintiff's trademark rights;

4.      That Defendants be adjudged to have violated 15 U.S.C. § 1125(a) by infringing Plaintiff's trademark rights;

5.      That Defendants be adjudged to have unlawfully infringed the Asserted Patents;

6.      That Plaintiff be awarded damages pursuant to 15 U.S.C. § 1117(a), sufficient to compensate it for the damage caused by Defendants' misconduct, including for its willfulness;

7.      That Plaintiff be awarded statutory damages up to $2 million per counterfeit mark per type of good, or actual damages and a reasonable portion of Defendants' infringing profits to be automatically trebled, pursuant to 15 U.S.C. § 1117(b) and (c);

8.      That Plaintiff be awarded a reasonable portion of Defendants' profits derived by reason of said acts;

9.      That such damages and profits be enhanced and awarded to Plaintiff and that it be awarded its costs, attorneys' fees and expenses in this suit under 15 U.S.C. § 1117, as a result of Defendants' willful, intentional, and deliberate acts in violation of the Lanham Act, and also for its infringement by use of a counterfeit mark;

10.     Order an award of damages to Plaintiff in an amount adequate to compensate Plaintiff for Defendants' trademark and patent infringement, said damages to include profit disgorgement but be in no event less than a reasonable royalty;

11.     Enter a judgment that the infringement was willful and treble damages pursuant to

35 U.S.C. § 284;

12.     Order an accounting to determine the damages to be awarded to Plaintiff as a result of Defendants' infringement, including an accounting for infringing sales presented through trial and those not presented at trial and award additional damages for any such infringing sales not presented at trial.

13.     Assess pre-judgment and post judgment interest and costs against Defendants, together with an award of such interest and costs, in accordance with *inter alia* 35 U.S.C. §284;

14.     Render a finding that this case is "exceptional" and award to Plaintiff its costs, expenses and reasonable attorneys' fees, as provided by the Trademark Act and/or Patent Act;

15.     Recovery of damages from Defendants, including but not limited to the past-due invoiced amounts, interest, late charges, and restoration and mitigation costs, in an amount not less than the Unpaid Amounts, according to proof at trial;

16.     Attorneys' fees, litigation expenses, and costs of suit incurred by Plaintiff in this action, in an amount of at least $25,000 and larger amount subject to proof;

17.     Pre- and post-judgment interest at the legal rate of at least 8% per annum;

18.     All other actual, compensatory or restitutionary damages proximately caused by any of the actions and claims alleged herein; and

19.     Grant such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully

requests a trial by jury of all issues properly triable by jury.

Respectfully Submitted this the 17th day of September, 2025.

/s/ *J. Walter Newman IV*
J. Walter Newman IV

Newman & Newman
J. Walter Newman IV, MSB No. 3832
601 Renaissance Way, Suite A
Ridgeland, MS 39157
Telephone: (601) 948-0586
wnewman95@msn.com
Local Counsel to Shenzhen Kanger
Technology Co., Limited

Troutman Peppel Lock LLP
Ben Lewis Wagner, *pro hac vice pending*
11682 El Camino Real, Ste. 400
San Diego, CA 92130-2092
Telephone:       858.509.6000
Jacob M. Burr, *pro hac vice pending*
600 Peachtree St. NE, Ste. 3000
Atlanta, GA 30308
Telephone:       404.885.2730

Lead Counsel to Shenzhen Kanger
Technology Co., Limited

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 17, 2025 the foregoing document was electronically filed with the Clerk of Court using the CM/ECF electronic filing system, which will then send a notification of such filing to counsel of record.

Respectfully Submitted this the 17th day of September, 2025.

*/s/ J. Walter Newman IV*
J. Walter Newman IV

Newman & Newman
J. Walter Newman IV, MSB No. 3832
601 Renaissance Way, Suite A
Ridgeland, MS 39157
Telephone: (601) 948-0586
wnewman95@msn.com
Local Counsel to Shenzhen Kanger
Technology Co., Limited

307572122